1819.
JUNE.

Hayward
vs
Carroll

HAYWARD vs. CARROLL, et al.

**APPEAL** from the Court of Chancery. The bill was filed by *R. Chamberlaine*, *G. R. Hayward* and *W. Hayward*, of whom *W. Hayward* is the only survivor, (now appellant,) against *D. Carroll* and *C. Carroll* of *Carrollton*. It states that *D. Carroll*, having mortgaged certain lands to *C. Carroll* of *Carrollton*, for money due to him, afterwards sold the greatest part of such lands to *R. Chamberlaine*, and bound himself, by his bonds duly executed, to make a title free from all incumbrances, on payment of the purchase money; for which *Chamberlaine* gave twelve bonds, payable at certain periods. That as many of these latter bonds were assigned by *D. Carroll* to *C. Carroll*, as *C. Carroll's* debt, secured by the mortgage, amounted to. That afterwards *R. Chamberlaine* assigned to *G. R. Hayward* and *W. Hayward*, the aforesaid bonds of conveyance, and they took up the bonds assigned by *D. Carroll* to *C. Carroll*, by giving their own to *C. Carroll*, on condition that he would assign to them the said mortgage deed, which he did accordingly; and they pray by their bill that they may have the benefit of this mortgage and assignment, for the purpose of compelling *D. Carroll* to redeem the mortgage so assigned to them, in the same manner as *C. Carroll* might if he had not received their bonds, and given them an assignment of such mortgage. The assignment of the mortgage stated in the bill is in the following words: "Whereas *Robins Chamberlaine* has contracted to purchase of *Daniel Carroll* of *Baltimore*, part of a tract of land on which the said *Carroll* now resides, and the whole of the said tract is either mortgaged to me, or the title to part of it still remains in me, I do hereby release all my right, claim and title, to the part of the said land contracted for by the said *Chamberlaine*, to Messrs. *George Robins Hayward* and *William Hayward*, of *Talbot* county, for value received of them. Witness my hand and seal this 21st day of March 1803. *Ch. Carroll* of *Carrollton*, (L. S.) Test. *John Edmondson*."

The answer of *C. Carroll* admits the execution of the original paper, but denies that he ever intended to assign the mortgage to the *Haywards*. The answer of *D. Carroll* denies the assignment, and insists on the extinguishment of the mortgage by the payment of the mortgage debt. Testimony was taken under commissions issued for that purpose; but it is not material to state it.

KILTY, Chancellor, (February term 1815.) It appears that the complainants, *G. R.* and *W. Hayward* can have no right to relief on the bonds of conveyance, as *R. Chamberlaine* had no right to assign them after his insolvency, and the lands mentioned in them were returned in his schedule as his property. The chancellor is of opinion that the prayer for relief under the mortgage, cannot be granted, although there may have been some misapprehen-

*The answer of one defendant in chancery cannot be read in evidence against a co-defendant*

*If the complainant is interested in establishing a fact by the evidence of a co-defendant, he should examine him as a witness*

*Where the contract of the parties is in writing, it can only be proved by its production and evidence of its execution, or by the admission of the party who executed it. A copy is not evidence, though proved to be a true copy, unless the original is lost, destroyed or in the possession of the adverse party.*

*The complainant in his bill must put in issue whatever he intends proving, otherwise it cannot be given in evidence.*

*The court of chancery, decrees only secundum al. legata and probata.*

sion on the subject, and *G. R.* and *W. Hayward* may sustain a considerable loss by the transaction. There is among the insolvent papers one purporting to be a receipt from *C. Carroll* for the bonds of *R. Chamberlaine*, and a bond of *D. Carroll*, and a copy of that receipt, which may be the one referred to in *D. Carroll's* answer, but it is not marked as filed, and it does not state what those bonds were received for. There is nothing to show that these bonds were taken as a security additional to the mortgage, and the chancellor is of opinion, that if *C. Carroll* had thought proper to assign the mortgage on receiving good bonds from *W.* and *G. Hayward*, he ought to have returned the bonds which he had received from *D. Carroll*, and that both ought not to have been assigned without his consent; which opinion appears to correspond with that of *C. Carroll* himself; and there ought to be the strongest proof of both being assigned as a ground for the relief claimed by the bill. There is reason to believe from the evidence, that the exchange of the bonds was agreed to at first without reference to the mortgage, and that the release or assignment of the mortgage, or a part of it, was proposed and agreed to afterwards. *Decreed*, that the bill be dismissed. From that decree *W. Hayward*, the surviving complainant, appealed to this court.

The cause was argued before CHASE, Ch. J. and EARLE and DORSEY, J.

*Martin*, (Attorney General,) for the Appellant.

*Pinkney* and *Harper*, for the Appellees, contended, 1. That the paper called an assignment was merely a release; 1st. From its express words. 2d. From its objects as apparent on the face of it. 3d. From the limitation or restriction of its operation to a part only of the mortgaged premises. To release a mortgage, as to a part of the mortgaged premises, in favour of one who had purchased that part, is a natural and common operation; but to assign a part only of a mortgage is at least a very novel thing.

2. That no parol evidence can be allowed to vary or in any manner affect the operation or construction of this paper; it not being a case of *latent ambiguity* or of *mistake*, which chancery can correct.

3. That if this paper were an assignment in the most express and formal words, it could not operate in favour of the complainants as assignees—because, as assignees they cannot be in a better situation than *C. Carroll*, the mortgagor and assignor, but must be affected by all the equity which would operate against him, in favour of the mortgagor. And the assignor in this case could not have a decree for a foreclosure or sale, because the mortgaged debt was paid. This payment was effected by the bonds of *Chamberlaine*, assigned to the mortgagor by *D. Carroll*, and paid to the assignee by the *Haywards*. This payment was not the less perfect or effectual for being made on bonds

1819.

Hayward
vs
Carroll

instead of money. It equally discharged the mortgage debt, and must forever protect the mortgagor.

4. That the complainants, not having produced the bonds assigned to them, nor in any manner accounted for them, are to be considered as having received payment of them, and consequently as satisfied for the mortgage debt. Therefore, if they were assignees, and not affected by the payment of the mortgage debt to their assignor, they must still be precluded from the relief they pray by this payment to themselves.

They also contended that *D. Carroll* having by his answer denied that there was any assignment, the complainants were put to the proof of it, and that no such proof was made. The admission of the paper by *C. Carroll* cannot make it evidence against *D. Carroll*. It is well established in chancery that the answer of one defendant cannot be evidence against another defendant. *Wych vs. Meal,* 3 *P. Wms.* 311, *(note.) Anon.* 2 *P. Wms.* 300. 2 *Eq. Ca. Ab.* 67; and 1 *Harr. Chan. Prac.* 185.

DORSEY, J. delivered the opinion of the Court. *William Hayward* and *George R. Hayward,* who were complainants in the court of chancery, claim the benefit of a mortgage executed by the defendant *Daniel Carroll,* to *Charles Carroll* of *Carrollton,* the other defendant, on the ground that the latter had, for a valuable consideration, assigned the same to them; and in their bill they insert a copy of a paper, which they call an assignment, purporting to be executed by *Charles Carroll,* and attested by *John Edmondson* as a witness. *Charles Carroll,* in his answer, admits the execution of the original paper, but denies that he ever intended to assign the mortgage to the *Haywards.* The defendant, *Daniel Carroll,* by answer, not only positively denies the assignment, but insists on the extinguishment of the mortgage by the payment of the money.

It becomes necessary to inquire, whether the assignment alleged by the *Haywards* to have been made in their favour, is established by legal evidence.

The answer of *Charles Carroll* admits the execution of the original paper, of which a copy is exhibited, and therefore, with reference to him, the court have a right to decide on its operation. But as *Daniel Carroll,* by his answer, denies the execution of the assignment, the fact of such assignment is by him put in issue, and must therefore be proved. Where is the proof of this fact? Is it to be found in the admission of *Charles Carroll,* confessing the execution of the paper termed an assignment? It is not; because it is an established principle of evidence that the answer of one defendant cannot be read in evidence against a co-defendant. If the complainants were interested in establishing a fact by the evidence of a co-defendant, they might have examined him as a witness, on interrogatories, and the witness then would have been subject to the cross examination of the other defendant. To withhold from

such defendant the privilege of cross examination, would be unjust, and this injustice must necessarily result from the practice of permitting the answer of one defendant to be read in evidence against a co-defendant.

Let us proceed one step further, and see whether the fact of assignment is proved by *Edmondson*. He proves that the *Haywards* requested him to receive from *Charles Carroll* an assignment of the mortgage in their favour, and that *Charles Carroll* did execute such an assignment, and delivered it to the witness, who afterwards gave it to the *Haywards*.

The assignment here alluded to has not been proved as an exhibit in the cause. That *Charles Carroll* executed a paper, which was deemed by the witness to be an assignment, is proved. But as the paper was in existence, its execution might and ought to have been proved; and even the copy exhibited by the complainants could not be evidence if it had been proved to be a true copy, (and of which there is no proof,) unless the original was lost, destroyed, or in the possession of the adverse party. The testimony of this witness, as well as the allegation in the complainants' bill, shew that the assignment did not rest in parol. As the contract, therefore, of the parties, was reduced to writing, it can only be proved judicially, by the production and proof of the written agreement, or by the admission of the defendants in their answers; as neither of those facts exist, we are of opinion that the pretended assignment is not proved.

It was urged by the appellant's counsel, that even this view of the case was not fatal to the claim of the complainants, inasmuch as the assignment to them by *Charles Carroll*, of *Robins Chamberlaine's* bonds, must be considered in equity as an assignment of the mortgage. Supposing, for the sake of argument, (and we are only prepared to make the admission for that purpose,) that such would be the effect, still it is evident that the chancellor's decree ought to be affirmed. The complainants sought relief on the ground that *Charles Carroll*, by an agreement reduced to writing, did assign to them the mortgage. This allegation is put in issue. The complainants fail in establishing their equity as displayed in their bill, but prove a case entirely distinct and different from it. We say entirely different, because the bill, so far from relying on the assignment of *Chamberlaine's* bonds as the foundation of equity, does not even state that *C. Carroll* had possession of them. Can this new case, arising out of facts, not one of which were put in issue by the bill, entitle the complainants to a decree? If we were to answer affirmatively, we should prostrate that long established rule which declares that the complainant in his bill must put in issue whatever he intends proving, otherwise he will not be permitted to give it in evidence; and therefore it is that the court of chancery pronounces its decree *secundum allegata*

1819.

Ghiselin & Worthington
vs
Fergusson

*and probata,* to shield the defendants against the fatal con-
sequences of surprize.

As there is no legal evidence of an assignment of the
mortgage in the record, it follows that the chancellor did
not err in dismissing the complainants' bill. His decree
ought, therefore, to be affirmed.

CHASE, Ch. J. delivered his opinion, affirming the de-
cree of the chancellor upon the points arising under the
decree.

DECREE AFFIRMED.